UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| SHARAE MASSEY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>STAR NURSING, INC.,<br><br>　　　　　Defendant. | Case No.　21-cv-01482-EJD<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR EXPENSES; JUDGMENT**<br><br>Re: ECF Nos. 40, 41 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement between Plaintiff Sharae Massey and Defendant Star Nursing, Inc. on October 24, 2022.  ECF No. 39 ("Prelim. Approval Order").  On December 19, 2022, Plaintiff filed her unopposed Motion for Final Approval of Class Action Settlement and indicated that no class member had objected to or opted out of the settlement.  ECF Nos. 40, 40-1.  On February 23, 2022, the Court held a hearing and heard arguments from the parties.

Having considered the motion briefing, the terms of the settlement agreement, the arguments of counsel, and the other matters on file in this action, the Court GRANTS the motion for final approval.  The Court finds the settlement to be fair, adequate, and reasonable.  The provisional appointments of the class representative and class counsel are confirmed.

Plaintiff's requests for attorneys' fees and costs, service award, and the Settlement Administrator's expenses are GRANTED.  The Court ORDERS that class counsel shall be paid $175,000.00 in attorneys' fees and $11,604.83 in expenses, Plaintiff Sharae Massey shall be paid a

1    $5,000.00 service award, and Settlement Administrator CPT Group, Inc. shall be paid $10,500.00.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff Sharae Massey ("Plaintiff") filed the putative class action complaint on March 2, 2021, against Defendant Star Nursing, Inc. ("Defendant"), and the operative Second Amended Complaint on June 22, 2021.  ECF Nos. 1, 24.  The Second Amended Complaint alleges that Defendant—a healthcare staffing company that employs hourly healthcare workers on short-term travel assignments at healthcare facilities throughout California—underpaid the overtime owed to employees because it excluded the value of per diem payments from the calculation of overtime rates.  ECF No. 24.  Plaintiff asserted claims for failure to pay overtime under California Labor Code §§ 510 and 1194; unfair business practices under California Business & Professions Code § 17200, *et seq.*; waiting time penalties under California Labor Code § 203; violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); and civil penalties under the California Labor Code Private Attorney General Act ("PAGA").  *Id.*

The parties reached an early settlement prior to class certification after a full-day mediation with Honorable Suzanne Segal followed by two months of continued settlement negotiations with the assistance of Judge Segal.  ECF No. 42-1 ("Hayes Decl.") ¶¶ 13–14.  The Settlement Agreement and Release ("Settlement Agreement"), attached hereto as **Exhibit A**, defines the class as follows:

> All non-exempt hourly employees employed by Star Nursing, Inc. in California who, at any time from March 2, 2017 through [October 24, 2022], worked one or more workweeks in which they were paid overtime and received a stipend.

(the "Settlement Class").  Settlement Agreement §§ I.A., I.BB.

In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Hayes Pawlenko LLP as Class Counsel and Plaintiff as class representative.  Prelim. Approval Order 8.  The Court also appointed CPT Group, Inc. ("CPT") as the Settlement Administrator.  *Id.* at 9.

Case No.: 21-cv-01482-EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOT. FOR ATTYS.' FEES, COSTS, SERVICE AWARD, AND SETTL. ADMIN. EXPENSES

2

United States District Court
Northern District of California

**B.      Terms of the Settlement Agreement**

Under the terms of the Settlement Agreement, Defendant will pay $700,000.00 ("Common Fund") into a non-reversionary settlement fund without admitting liability.  Settlement Agreement §§ I.O., III.A., III.G.1.  This amount includes attorneys' fees and litigation costs, the cost of class notice and settlement administration, the class representative's service award, payment of civil penalties pursuant to PAGA, and valid claims from Settlement Class members.  *Id.* §§ III.A–C.  It excludes Defendant's share of payroll taxes on the portion of the settlement payments deemed wages, which Defendant will pay separately.  *Id.* § III.A.1.

**1.      Attorneys' Fees and Costs**

Under the Settlement Agreement, Class Counsel may seek up to 25% of the Common Fund, or $175,000.00, in attorneys' fees and no more than $15,000.00 in litigation costs. Settlement Agreement §§ III.B.2–3.

**2.      Settlement Administration Expenses**

The Settlement Agreement limits the fees and costs paid to the Settlement Administrator to $20,000.00.  *Id.* § III.B.5.  Here, CPT seeks $10,500.00 in settlement administration costs.  ECF No. 43 ("Russa Supp. Decl.") ¶ 8.

**3.      Class Representative Service Award**

Plaintiff may seek a service award of up to $5,000.00 in exchange for a general release of all claims against Defendant.  Settlement Agreement §§ III.B.1., III.F.1.

**4.      Civil Penalties**

The Settlement Agreement provides for civil penalties under PAGA totaling $50,000.  *Id.* § I.T.  Of this amount, 75%, or $37,500.00, will be paid to the Labor & Workforce Development Agency.  *Id.* § III.B.4.

**5.      Class Relief**

After deductions from the Common Fund for fees, costs, penalties, and the service award, approximately $457,000.00 (65%) will remain to be distributed among the participating Settlement Class members.  Russa Supp. Decl. ¶ 8.  Settlement Class members will be paid pro

United States District Court
Northern District of California

rata based on the number of qualifying weeks worked in California during the class period.

Settlement Agreement § III.C.1.  To calculate each Settlement Class member's settlement share,

the Settlement Agreement provides that:

> The Net Settlement Amount will first be divided by the total number of weeks worked, in aggregate, by the Participating Class Members to determine the monetary value of each workweek. Each Participating Class Member's Settlement Share will then be calculated by multiplying that individual's number of weeks worked within the Settlement Class Period by the monetary value of each workweek.

*Id.*  Each participating Settlement Class member will automatically receive 95% of her settlement

share.  *Id.* § C.1.a.  The average amount of this distribution is estimated to be $1,038.64.  Russa

Supp. Decl. ¶ 9.  Settlement Class members who timely returned a FLSA Opt-In Form will receive

the remaining 5% of their settlement shares, and the funds allocated to those members who did not

timely return a FLSA Opt-In Form will be re-allocated pro rata among the members who returned

the FLSA Opt-In Form.  Settlement Agreement § C.1.b.  The average FLSA payment is estimated

to be $486.17.  Russa Supp. Decl. ¶ 10.

All Settlement Class members are deemed to have released all non-FLSA claims against

Defendant that accrued during the class period.  Those Settlement Class members who timely

return a FLSA Opt-In Form are also deemed to have released all FLSA claims that accrued during

the class period.  Settlement Agreement §§ III.F.2.

### 6.    Residual Funds

The Settlement Agreement provides that no amount of the Common Fund will revert to

Defendant.  *Id.* § III.C.5.  When a check mailed to a participating Settlement Class member is not

redeemed or deposited within one hundred and eighty (180) days from the date of issuance, the

Settlement Administrator will deposit the amount of the unclaimed check with the Court's

Unclaimed Funds Registry in the member's name.  *Id.* § III.E.1.

### C.    Class Notice and Claims Administration

The Settlement Agreement is being administered by CPT Group, Inc.  Following the

United States District Court
Northern District of California

United States District Court
Northern District of California

Court's preliminary approval and conditional certification of the settlement, Defendant provided CPT with the full name, last known address, social security number, and dates of employment during the class period for each of the 418 class members.  ECF No. 42-3 ("Russa Decl.") ¶ 5. CPT used the National Change of Address System to update the addresses provided by Defendant and thereby located 90 updated addresses.  *Id.* ¶ 6.  CPT then mailed class action notice packets to the 418 class members.  *Id.* ¶ 7.  CPT was returned 53 notice packets without a forwarding address, and subsequently performed a skip trace on the returned mail using Accurint, a comprehensive address database that uses hundreds of different databases supplied by credit reporting agencies, public records, and other national databases.  Russa Supp. Decl. ¶ 4.  Based on the skip trace results and information from the parties' counsel or class members, CPT remailed 46 notice packets.  *Id.* ¶ 5.  As of February 6, 2023, 20 notice packets have been deemed undeliverable.  *Id.*

Class members were given until January 23, 2023, to object to or opt out of the Settlement Agreement, and no objections or requests to opt-out were received.  Russa Supp. Decl. ¶¶ 3, 6. CPT received 47 valid FLSA Opt-In Forms.  *Id.* ¶ 7.

Pursuant to the Settlement Agreement, all 418 class members will automatically receive 95% of their settlement shares.  The 47 class members who timely returned FLSA Opt-In Forms will receive the remaining 5% of their settlement shares, and a pro rata allocation of the 5% settlement shares of the class members who did not timely return FLSA Opt-In Forms.

## II.    FINAL APPROVAL OF SETTLEMENT

### A.    Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, adequate, and consistent with the plaintiff's fiduciary obligations to the class.  *See Hanlon v.*

1    *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*

2    *Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Courts balance a number of factors to gauge fairness

3    and adequacy, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity,

4    and likely duration of further litigation; (3) the risk of maintaining class action status throughout

5    the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage

6    of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

7    participant; and (8) the reaction of the class members to the proposed settlement.  *Id.*; *Churchill*

8    *Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

9            Class settlements reached prior to formal class certification require a "heightened fairness

10   inquiry."  *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th Cir. 2022) (quoting

11   *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)).  This heightened inquiry

12   requires a district court to apply a "higher level of scrutiny for evidence of collusion or other

13   conflicts of interest" than otherwise required under Rule 23(e).  *Roes*, 944 F.3d at 1043 (citation

14   omitted).  Therefore, when reviewing a pre-certification settlement agreement, the district court

15   must not only explore the balancing factors but also "look[] for and scrutinize[] any subtle signs

16   that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations."

17   *Id.* (internal quotation marks and citation omitted).

18           **B.      Analysis**

19                   **1.      The Settlement Class Meets the Prerequisites for Certification**

20           As an initial matter, the Court affirms the bases for the conditional class certification in the

21   Court's preliminary approval order per the prerequisites in Rule 23(a).  *See* ECF 39.

22           With respect to numerosity under Rule 23(a)(1), the Settlement Class includes 418

23   members, making it so numerous that joinder of all members is impracticable.

24           Rule 23(a)(2) commonality requires "questions of fact or law common to the class,"

25   though "[e]ven single common question of law or fact that resolves a central issue will be

26   sufficient to satisfy this mandatory requirement."  *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728

27   Case No.: 21-cv-01482-EJD

28   ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING
     MOT. FOR ATTYS.' FEES, COSTS, SERVICE AWARD, AND SETTL. ADMIN. EXPENSES

1    (9th Cir. 2020).  The single issue in this action— whether per diem payments were unlawfully

2    excluded from the calculation of overtime rates—is common to all class members.

3           Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the

4    representative parties are typical of the claims or defenses of the class."  Plaintiff and members of

5    the Settlement Class are all hourly traveling healthcare workers who were employed by Defendant

6    on short-term travel assignments at healthcare facilities in California during the class period.

7    Plaintiff's overtime, unlawful business practices, waiting time, and PAGA claims hinge on the

8    common issue of whether Defendant's exclusion of per diem payments from the calculation of

9    overtime rates violates California law, making Plaintiff's claims typical of class members.

10          With respect to Rule 23(a)(4), the Court finds that Plaintiff and Class Counsel have fairly

11   and adequately represented the interests of the Class.  No conflict of interest appears as between

12   Plaintiff and the Settlement Class members.  Class Counsel are experienced in wage and hour

13   class actions and have been appointed as lead counsel in numerous other wage and hour cases both

14   in federal and state courts throughout California and, therefore, are adequate to represent the

15   Settlement Class.  ECF No. 35-3 ¶ 5.

16          The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate

17   and "a class action is superior to other available methods for fairly and efficiently adjudicating"

18   the claims here.  Each member's claim turns on the legality of Defendant's overtime rate

19   calculation policy regarding per diem payments, so that the class "will prevail or fail in unison."

20          Based on the foregoing, the Settlement Class satisfies the prerequisites of Rule 23.

### 2.    Adequate Notice Was Provided

22          A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

23   class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The notice must

24   be "reasonably calculated, under all the circumstances, to apprise interested parties of the

25   pendency of the action and afford them an opportunity to present their objections."  *In re Apple*

26   *Device Performance Litig.*, 50 F.4th at 779.  However, "neither Rule 23 nor the Due Process

United States District Court
Northern District of California

1   Clause requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*,

2   844 F.3d 1121, 1128 (9th Cir. 2017).

3           The Court found the parties' proposed notice procedures provided the best notice

4   practicable and reasonably calculated to apprise Class members of the settlement and their rights

5   to object or exclude themselves.  Prelim. Approval Order 8–9.

6           Pursuant to those procedures, the Settlement Administrator performed location services on

7   the 418 class members and then mailed class action notices to each class member with updated

8   addresses.  Russa Decl. ¶¶ 5–6.  Although the notice packets to 53 class members were initially

9   returned as undelivered, the Settlement Administrator located new likely addresses for 46 of those

10  members.  Russa Supp. Decl. ¶¶ 4–5.  Following that second mailing, 20 notice packets remain

11  undelivered.  *Id.*

12          Based upon the foregoing, the Court finds that the Settlement Class has been provided

13  adequate notice.

14                      **3.      The Settlement Is Fair and Reasonable**

15          The Court finds that Rule 23(e)(2) and the *Hanlon*/*Churchill* factors indicate the settlement

16  here is fair and reasonable under the heightened scrutiny applied to pre-certification agreements.

17          As an initial matter, the Court finds that both Plaintiff Massey and Class Counsel have

18  adequately represented the class.  Plaintiff furnished counsel with pertinent policies, contracts, and

19  pay records; reviewed pleadings and conferred with class counsel regarding potential claims;

20  assisted with the preparation of initial disclosures; reviewed Defendant's discovery responses and

21  provided insights to class counsel on policies discussed therein; and reviewed settlement

22  documents and conferred with class counsel regarding settlement terms. ECF No. 42-2 ("Plaintiff

23  Decl.") ¶¶ 12–15.  Plaintiff was working as a travel nurse when she filed this action in March

24  2021, and assumed the risk not only of potential liability for Defendant's costs in the event of an

25  adverse outcome, but also of potential difficulty in finding continued employment in the travel

26  nursing industry.  *Id.* ¶¶ 7–8.  The Court has also already recognized the expertise and experience

27

28

United States District Court
Northern District of California

Case No.: 21-cv-01482-EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING
MOT. FOR ATTYS.' FEES, COSTS, SERVICE AWARD, AND SETTL. ADMIN. EXPENSES

of Class Counsel.  *See supra* Section II.B.1.

Proceeding to trial would have been costly, without guarantee of recovery, and with the possibility of protracted appeals.  As discussed during oral argument, although Class Counsel has prevailed before the Ninth Circuit on a similar claim regarding the use of per diem payments in overtime calculations, that holding was highly fact-specific and involved circumstances not present here.  *See also* Hayes Decl. ¶¶ 26–28 (relevant factors not present here included defendant's per diem payments to employees who did not incur travel expenses and permission for employees to use extra hours worked in one week to offset missed hours in another week).

Plaintiff conducted thorough discovery and investigation prior to settlement, including multiple sets of written discovery resulting in the receipt of all of Defendant's policies, procedures, and practices regarding paying stipends and calculating overtime; all versions of the assignment agreements used by Defendant during the class period; and payroll records for all class members employed in California dating back to 2017.  Hayes Decl. ¶¶ 7–9.  If Plaintiff prevailed, the damage analysis conducted by Class Counsel projected a maximum recovery after trial of $1,645,260.00, including $841,500.00 in unpaid overtime, and up to $803,760.00 in waiting time and PAGA penalties.  *Id.* ¶¶ 20–23.  The settlement amount of $700,000.00 therefore represents about 83% of the unpaid overtime and about 42% of the maximum potential recovery.  However, Defendant claimed that it did not have the financial resources to withstand judgment for the amount of the maximum projected damages.  *Id.* ¶ 11.  Plaintiff hired a forensic accounting expert to review Defendant's tax records and financial statements, and with the expert's assistance determined Defendant's ability to satisfy a judgment.  *Id.* ¶¶ 15-16.  As described at oral argument, Class Counsel concluded, based on their experience, that settlement was justified given the risks on the merits and given that proceeding with litigation through trial presented a serious risk of an unsatisfied judgment.

The Settlement Agreement at which the parties arrived passes the heightened level of scrutiny for any indication, however subtle, of collusion or self-interestedness on the part of Class

Case No.: 21-cv-01482-EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOT. FOR ATTYS.' FEES, COSTS, SERVICE AWARD, AND SETTL. ADMIN. EXPENSES

9

United States District Court
Northern District of California

1    Counsel.  *See Roes*, 944 F.3d at 1043.  Counsel for both parties are highly experienced, and this

2    Settlement Agreement appears to have been the product of arm's length and informed

3    negotiations.  The negotiations, assisted by Judge Segal, took place over the course of several

4    months, during which, as Class Counsel stated at oral argument, Plaintiff obtained and reviewed

5    Defendant's tax records and other financial documents.  *See also* Hayes Decl. ¶¶ 13–17.  The

6    record does not reflect "any subtle signs that class counsel have allowed pursuit of their own self-

7    interests . . . to infect the negotiations," *Roes*, 944 F.3d at 1043 (internal quotation marks omitted),

8    and the Court finds no suggestion of collusion or unfairness.

9        Lastly, the actual reaction of the class to the Settlement Agreement was overwhelmingly

10   positive.  The Court received zero objections and opt-outs as of the January 23, 2023 deadline, or

11   for that matter as of the February 23, 2023 hearing.  "[T]he absence of a large number of

12   objections to a proposed class action settlement raises a strong presumption that the terms of a

13   proposed class settlement action are favorable to the class members."  *In re Omnivision Techs.,*

14   *Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Village*,

15   361 F.3d at 577 (holding that approval of a settlement that received 45 objections and 500 opt-outs

16   out of 90 thousand class members was proper).

17       After considering the foregoing Rule 23(e)(2) factors and the relevant *Hanlon*/*Churchill*

18   factors, the Court concludes that the Settlement Agreement is fair, reasonable, and adequate.

19       The Court previously approved the proposed plan of allocation.  Prelim. Approval Order 9.

20   That plan provides that participating class members will be eligible to recover their respective

21   settlement share in two checks.  As compensation for the state law class claims, one check

22   consisting of 95% of an individual's share will automatically be sent to all participating class

23   members without the need for returning a claim.  Participating class members who timely returned

24   a FLSA Opt-In Form will receive the remaining 5% for the FLSA claim.  The shares of the FLSA

25   funds of those class members who did not timely return a FLSA Opt-In Form will be reallocated

26   to those who returned a form.  The reallocation will be made on a pro rata basis depending on

27

28   Case No.: 21-cv-01482-EJD
     ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING
     MOT. FOR ATTYS.' FEES, COSTS, SERVICE AWARD, AND SETTL. ADMIN. EXPENSES

United States District Court
Northern District of California

weeks worked within the class period.  The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4. Certification Is Granted and the Settlement Is Approved

After reviewing all required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATOR'S EXPENSES

### A. Attorneys' Fees and Costs

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fundamentally fair, adequate, and reasonable" in order to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise." *Id.* at 964.

### 1. Fees

Here, Class Counsel requests an attorneys' fee award of $175,000.00.[1]  The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th

---

[1] The Settlement Agreement permits attorneys' fees of up to 25% of the $700,000.00 Common Fund, which equals $175,000.00.  Settlement Agreement § III.B.2.  Defendants do not oppose the fee request.

1    Cir. 2011) (citing *Vizcaino*, 290 F.3d at 1050–51.)

2          Under the lodestar approach, a court multiplies the number of hours reasonably expended

3    by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court

4    calculates the lodestar figure by multiplying the number of hours reasonably expended on a case

5    by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

6    the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit

7    "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

8    adequate explanation in the record of any 'special circumstances' justifying a departure."  *In re*

9    *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

10   1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery

11   would be "either too small or too large in light of the hours devoted to the case or other relevant

12   factors."  *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery

13   method, courts consider a number of factors, including whether class counsel "'achieved

14   exceptional results for the class,' whether the case was risky for class counsel, whether counsel's

15   performance 'generated benefits beyond the cash settlement fund,' the market rate for the

16   particular field of law (in some circumstances), the burdens class counsel experienced while

17   litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled

18   on a contingency basis."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir.

19   2015).  "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree

20   of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

21         Using the lodestar method, the Court finds the attorneys' fees sought to be reasonable.  The

22   Court has also performed a cross-check using the percentage-of-the-fund method and arrived at

23   the same conclusion.

24         Based on the detailed time records submitted by counsel, *see* ECF No. 42-4, the Court

25   calculates the lodestar figure as (1) 173.20 hours at a $650.00 hourly rate plus (2) 74.20 hours at a

26   $600.00 hourly rate for a total of $157,100.00.  *See also* Hayes Decl. ¶ 44.  The $175,000.00 in

27

*United States District Court*
*Northern District of California*

fees sought by Class Counsel amounts to approximately 111% of the lodestar figure, *i.e.*, applies a reasonable multiplier of roughly 1.1 to the lodestar.  The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market.

Using the percentage-of-the-fund method as a cross-check, the attorneys' fees sought are at the Ninth Circuit's 25% benchmark.  The Court finds that Class Counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding trial, and that a benchmark fee award is reasonable.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $175,000.00 to be fair, reasonable, and adequate.

### 2.        Litigation Costs

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement for litigation expenses in the amount of $11,604.83, and provides records documenting those expenses, *see* ECF No. 42-5.  The costs sought are below the $15,000.00 maximum provided in the Settlement Agreement.  Settlement Agreement § III.B.3.  The Court finds the amount of $11,604.83 to be reasonable, fair, and adequate.

### B.        Class Representative's Service Award

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton*, 327 F.3d at 977.  "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of

United States District Court
Northern District of California

the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, Plaintiff Massey came forward to represent the interests of 417 others, with very little personally to gain, as Plaintiff's settlement share is projected to be $194.06—well below the estimated average settlement share of $1,524.81.  *See* Russa Supp. Decl. ¶¶ 9–11.  Plaintiff compiled documents, assisted with preparation of initial disclosures, reviewed responses to discovery requests, conferred with Class Counsel regarding settlement terms, reviewed settlement documents, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs.  Plaintiff Decl. ¶¶ 12–16.  As a condition of the Settlement Agreement, Plaintiff entered into a global release broader than the release applicable to other class members.  Settlement Agreement § III.F.1.  Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others.  Thus, the Court approves the requested service award payment of $5,000.00 for Plaintiff.

### C. Settlement Administrator's Expenses

The Court previously appointed CPT to act as the Settlement Administrator for the flat fee of $10,500.00.  Prelim. Approval Order 9.  The Court now confirms approval of $10,500.00 in settlement administration fees to CPT Group, Inc. for its services associated with administering the Settlement Agreement.

## IV. CONCLUSION

Based upon the foregoing, the Motion for Final Approval of Proposed Class Action Settlement is GRANTED.  The Motion for Attorneys' Fees, Costs, Service Award, and Settlement

1    Administrator Expenses is GRANTED as follows:

2    • Class Counsel is awarded $175,000.00 in attorneys' fees;

3    • Class Counsel is awarded $11,604.83 in litigation costs;

4    • Plaintiff Sharae Massey is granted a service award of $5,000.00; and,

5    • Settlement Administrator CPT Group, Inc.'s service fee of $10,500.00 is approved.

6    Without affecting the finality of this order in any way, the Court retains jurisdiction of all

7    matters relating to the interpretation, administration, implementation, effectuation and

8    enforcement of this Order and the Settlement Agreement, including the designation of a *cy pres*

9    recipient should the need arise.

10   **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that final judgment is

11   **ENTERED** in accordance with the terms of the Settlement Agreement, the Order Granting

12   Preliminary Approval of Class Action Settlement filed on October 24, 2022 (ECF No. 39), and

13   this Order.  This document will constitute a final judgment (and a separate document constituting

14   the judgment) for purposes of Federal Rule of Civil Procedure 58.

15   The parties shall file a post-distribution accounting in accordance with this District's

16   Procedural Guidance for Class Action Settlements.

17   The Clerk of Court shall close the file in this matter.

18   **IT IS SO ORDERED.**

19   This terminates ECF Nos. 40 and 41.

20   Dated: February 23, 2023

21

22

23   EDWARD J. DAVILA
     United States District Judge

24

25

26

27

28   Case No.: 21-cv-01482-EJD
     ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING
     MOT. FOR ATTYS.' FEES, COSTS, SERVICE AWARD, AND SETTL. ADMIN. EXPENSES
     15

United States District Court
Northern District of California

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made by and between, on the one hand, Plaintiff Sharae Massey ("**Plaintiff**" or "**Class Representative**") and, on the other, Defendant Star Nursing, Inc. d/b/a Star Nursing ("**Defendant**") (Plaintiff and Defendant collectively "**the Parties**"). The Parties hereby agree to the following Settlement, which if approved by the Court resolves the pending case: *Sharae Massey v. Star Nursing, Inc.*, Case No. 5:21-cv-01482-EJD, currently pending in the United States District Court, Northern District of California (the "**Action**" or "**Lawsuit**").

## I.    DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

A.    "**Class**" and **"Collective"** means:

All non-exempt hourly employees employed by Defendant in California who, at any time during the Settlement Class Period, worked one or more workweeks in which they were paid overtime and received a stipend.

B.    "**Class Counsel**" means Hayes Pawlenko LLP.

C.    "**Class Counsel Fees Payment**" and **"Class Counsel Litigation Expenses Payment"** mean the amounts awarded to Class Counsel by the Court to compensate them for, respectively, their attorneys' fees and litigation expenses incurred in connection with the Lawsuit, including their pre-filing investigation, their filing of the Lawsuit and all related litigation activities, this Settlement, and all post-Settlement compliance and approval procedures.

D.    "**Class Member**" is any non-exempt hourly employee who was employed by Defendant in the State of California and who, at any time during the Settlement Class Period, worked one or more workweeks in which he or she was paid overtime and received a stipend.

E.    "**Class Notice**" means the written notice to be provided to the Class and Collective advising them of this Settlement, which will be submitted to the Court for approval along with the Motion for Preliminary Approval.

F.    "**Class Notice Packet**" means the Class Notice, Exclusion Form, and FLSA Opt-In Form.

G.    **"Class Payment"** means ninety-five percent (95%) of each Class Member's Settlement Share that will automatically be distributed to each Participating Class Member without the need for making a claim.

H.    "**Class Representative Payment**" means the payments made to Plaintiff of up to Five Thousand Dollars ($5,000) in her capacity as Class Representative to

{3390680.DOCX:}

compensate her for initiating the Lawsuit, performing work in support of the Lawsuit, and undertaking the risk of liability for attorneys' fees and expenses in the event they were unsuccessful in the prosecution of the Lawsuit.

I.      "**Defense Counsel**" means Weintraub Tobin Chediak Coleman Grodin Law Corporation.

J.      "**Court**" means the United States District Court, Northern District of California.

K.      "**Defendant**" means Star Nursing, Inc.

L.      "**Effective Date**" of this Settlement shall mean seven (7) calendar days after the Final Approval Order has been entered and the time for filing an appeal of the Final Approval Order has elapsed with no appeal or writ contesting the Final Approval Order having been taken.  If any appeal or writ has been filed contesting this Settlement and/or the Final Approval Order, then the date which is thirty (30) days after any appeal opposing or contesting this Settlement and/or Final Approval Order has been dismissed finally and conclusively with no right to pursue similar remedies or relief, or any appeal has been resolved to uphold the Final Approval Order.

M.      "**Exclusion Form**" means the form by which a Class Member may elect to exclude themselves from the Settlement.

N.      "**Final Approval Hearing**" means the Hearing to be conducted by the Court to determine whether to finally approve and implement the terms of this Agreement.

O.      "**Gross Settlement Amount**" or "**GSA**" means the amount of Seven Hundred Thousand Dollars ($700,000.00). The Gross Settlement Amount, in addition to its share of any payroll taxes, is the maximum total amount that Defendant is obligated to pay for any and all purposes under this Agreement, inclusive of attorneys' fees and litigation costs, third party settlement administration fees, PAGA Payment, all payments to the Settlement Class, and Class Representative Payment.

P.      "**Final Approval Order**" means an order finally and unconditionally granting final approval of this Settlement Agreement, entering final judgment with respect to the Lawsuit, and authorizing payments to the Settlement Administrator, the Participating Class Members, Plaintiff, the LWDA, and Class Counsel as provided in this Agreement.

P.      "**FLSA Claim Payment**" means the five percent (5%) of each Class Member's Settlement Share that will be distributed to those Participating Class Members who timely sign and return a FLSA Opt-In Form.

Q.      "**FLSA Opt-In Form**" means the form by which a Class Member may opt-in to the Released FLSA Claims and thereby receive a FLSA Claim Payment.

R.      "**Net Settlement Amount**" means the Gross Settlement Amount of Seven Hundred Thousand Dollars ($700,000.00) to be paid by Defendant pursuant to this

Settlement, less (i) the Class Representative Payment approved by the Court; (ii) the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment approved by the Court; (iii) the portion of the PAGA Payment payable to the LWDA as described in this Agreement; and (iv) the Settlement Administrator's reasonable fees and expenses, as described in this Agreement and approved by the Court.

S.  "**Non-Participating Class Member**" means a Class Member who submits a valid and timely Election Not to Participate in this Settlement.

T.  "**PAGA Payment**" refers to the payment of $50,000 from the Gross Settlement Amount that is allocated to the resolution of claims asserted under the California Labor Code Private Attorneys General Act of 2004 (California Labor Code §§ 2698, et seq., "PAGA").  Of this $50,000 payment, seventy-five percent (75%) is payable to the LWDA and the remaining twenty-five percent (25%) will be distributed to Participating Class Members as part of the Net Settlement Amount.

U.  "**Participating Class Member**" means a Class Member who does not submit a valid and timely Election Not to Participate in this Settlement.

V.  "**Preliminary Approval of the Settlement**" means the Court's Order preliminarily approving the Settlement.

W.  "**Released Non-FLSA Claims**" means, for each Participating Class Member regardless of whether he or she returns a FLSA opt-in form, any and all non-FLSA lawsuits, arbitrations, causes of action, complaints, obligations, duties, agreements, promises, damages, costs, penalties, interest, fees (including without limitation attorney's fees), losses, expenses, debts, demands, liabilities, or claims asserted in the Lawsuit (included but not limited to alleged violations of California Labor Code sections 201, 203, 510, 1194, and 2698 *et seq.*, and California Business & Professions Code section 17200, *et seq.*), or that could have been asserted based on any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in the operative Complaint in this Lawsuit, including, without limitation, claims for unpaid wages, waiting time penalties, untimely payment of wages, wage statements, business expense reimbursement, unlawful deductions from wages, derivative claims including unfair business practices, and any and all penalties, interest and attorneys' fees and costs for such claims.

X.  "**Released FLSA Claims**" means, for each Participating Class Member who timely returns a FLSA opt-in form, all FLSA claims that are alleged in the operative Complaint on file in this Lawsuit, and all FLSA claims that could have been asserted under the FLSA based on any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in the operative Complaint in this Lawsuit, including, without limitation, claims for unpaid wages, liquidated damages, record keeping violations, and any and all penalties, interest and attorneys' fees and costs for such claims.

Y.   "**Released Parties**" means Defendant, its parents and all of its subsidiaries, related, and affiliated entities (including but not limited to Star Nursing Services, Inc., Star Nursing Agency, Inc., and Star Nursing Partners, LLC) and each of their respective past and present employees, officers, directors, administrators, staff, attorneys, owners, shareholders, members, partners, insurers, benefit plan fiduciaries and agents, and all of their respective successors and assigns including but not limited to all applicable entities, facilities, nursing homes and/or care centers listed in **Exhibit A**, where Participating Class Members performed staffing services as employees and/or co-employees of Defendant.

Z.   "**Settlement**" means the disposition of the Lawsuit and all related claims as detailed in, and to be effectuated by, this Agreement.

AA.  "**Settlement Administrator**" means the responsible settlement administrator proposed by the Parties and appointed by the Court to provide notice of this proposed Class Action Settlement to the Class and to perform other related functions to administer the Settlement as described herein. The Parties agree to propose the utilization of CPT Group, Inc. as the responsible settlement administrator.

BB.  "**Settlement Class Period**" or "**Class Period**" means the period of time from March 2, 2017 through the date the Court enters an Order granting preliminary approval of the settlement.

CC.  "**Settlement Share**" means each Participating Class Member's share of the Net Settlement Amount as provided by this Agreement.

## II.   RECITALS

A.   Plaintiff Sharae Massey filed a Class Action Complaint in the United States District Court, Northern District of California, on March 2, 2021. The operative Second Amended filed on June 22, 2021, includes the following: alleged failure to pay overtime wages; alleged unfair business practices under Cal. Bus. Code Sec. 17200, et seq.; alleged waiting time penalties under California Labor Code section 203; alleged violations of the Fair Labor Standards Act; and a PAGA claim based on the foregoing.

B.   In connection with the Lawsuit, Defendant produced documents, including, among other things, payroll and timekeeping records for Class Members during the Settlement Class Period. Class Counsel engaged in extensive review of these records in advance of and for purposes of mediation.

C.   On November 1, 2021, the Parties participated in a mediation session with Hon. Suzanne Segal and subsequently reached a memorandum of understanding on terms to resolve the Lawsuit. This Agreement replaces any other agreements, understandings, or representations between the Parties, and is fully admissible to prove the terms and conditions of the Settlement.

D.      Class Counsel represents it has conducted a thorough investigation into the facts of the Lawsuit. Based on the foregoing discovery and their own independent investigation and evaluation, Class Counsel and the Class Representative are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, or that Class Counsel anticipates could be raised by Defendant, and potential appellate issues.

E.      This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or will be construed as an admission by Defendant that the claims in Plaintiff's Lawsuit have merit or that Defendant bears any liability to Plaintiff or the Class on those claims or any other claims, or as an admission by Plaintiff that Defendant's defenses in the Lawsuit have merit. Defendant denies each and all of the claims alleged by Plaintiff in the Lawsuit. Nevertheless, Defendant has taken into account the uncertainty and risks inherent in any litigation and has also concluded that further defense of the Lawsuit would be protracted and expensive. Defendant, therefore, has determined that it is desirable and beneficial that the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

Based on these Recitals, the Parties agree as follows:

## III.    SETTLEMENT TERMS AND CONDITIONS

A.      **Gross Settlement Amount.** Subject to the terms and conditions of this Agreement, and in consideration for Settlement of the Lawsuit and the release of claims of the Class, Defendant agrees to pay or cause to be paid the Gross Settlement Amount as defined above. Any Class Representative Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses payment, PAGA Payment, Participating Class Members' Settlement Shares, and the Settlement Administrator's reasonable fees and expenses in administering the Settlement, as approved by the Court, shall be deducted from the Gross Settlement Amount.  All of the Gross Settlement Amount will be disbursed pursuant to this Agreement, and none of it will revert to Defendant. The Gross Settlement Amount shall be paid into a **Qualified Settlement Fund** (**"QSF"**) created by the Settlement Administrator pursuant to the funding timeline described below. The Settlement Administrator shall handle such monies pursuant to the terms of the Settlement.

1.      **Maximum Amount Paid**. The Gross Settlement Amount is the maximum total amount that Defendant is obligated to pay for any and all purposes under this Agreement, except that Defendant will be required to pay their share of any payroll taxes in addition to the Gross Settlement Amount.

2.      **Funding Timeline.** The Gross Settlement Amount shall be funded by Defendant over a 180 day period following the Effective Date.  Defendant shall deposit 1/3 of the Gross Settlement Amount ($233,333.33) with the Settlement Administrator within fourteen (14) days of the Effective Date.

SETTLEMENT AGREEMENT AND RELEASE

The second 1/3 of the Gross Settlement Amount ($233,333.33) shall be funded within 90 days of the Effective Date and the final 1/3 of the Gross Settlement Amount ($233,333.34) shall be funded within 180 days of the Effective Date.

B.     **Deductions from the Gross Settlement Amount.** Subject to the terms and conditions of this Agreement and Court approval, the Settlement Administrator will make the following deductions from the Gross Settlement Amount:

1.     **Class Representative Payment:** In addition to the Settlement Share determined to be due to Plaintiff as a Participating Class Member, Plaintiff may apply to the Court for a Class Representative Payment to be deducted from the Gross Settlement Amount. The amount of the Class Representative Payment, up to a maximum amount of Five Thousand Dollars ($5,000), shall be determined exclusively by the Court. The Class Representative Payment shall be made, without withholdings, pursuant to an IRS Form 1099 issued by the Settlement Administrator.

2.     **Class Counsel Fees Payment:** Class Counsel may apply to the Court for a Class Counsel Fees Payment to be deducted from the Gross Settlement Amount. The amount of such payment, up to a maximum amount of twenty five percent (25%) of the Gross Settlement Amount, shall be determined exclusively by the Court. The Class Counsel Fees Payment shall be made, without withholdings, pursuant to an IRS Form 1099 issued by the Settlement Administrator.

3.     **Class Counsel Litigation Expenses Payment:** Class Counsel pay apply to the Court for a Class Counsel Litigation Expenses Payment to be deducted from the Gross Settlement Amount. The amount of such payment, up to a maximum amount of Fifteen Thousand Dollars ($15,000), shall be determined exclusively by the Court. The Class Counsel Litigation Expenses Payment shall be made, without withholdings, pursuant to an IRS Form 1099 issued by the Settlement Administrator.

4.     **To the Labor & Workforce Development Agency (LWDA).** Seventy five percent (75%) of the $50,000 PAGA Payment (i.e., $37,500) shall be deducted from the Gross Settlement Amount and paid to the LWDA.

5.     **To the Settlement Administrator.** The fees and costs charged by the Settlement Administrator, not to exceed Twenty Thousand Dollars ($20,000), shall be deducted from the Gross Settlement Amount to compensate the Settlement Administrator for its reasonable fees and expenses related to administering this Settlement, including, but not limited to, printing, distributing, and tracking forms for this Settlement, calculating estimated amounts per Class Member, tax reporting, distributing all payments from the Gross Settlement Amount (including conducting skip trace address searches, as necessary), and providing necessary reports and

declarations, and other duties and responsibilities set forth herein to process this Settlement, as requested by the Parties.

C.    **Settlement Share.** After deducting from the Gross Settlement Amount the Class Representative Payment, the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment, the payment to the Settlement Administrator, and the portion of the PAGA Payment payable to the LWDA, the Settlement Administrator will pay a Settlement Share from the Net Settlement Amount to each Participating Class Member.

1.    **Calculation.** The Settlement Share to each Participating Class Members shall be calculated, pro rata, based on the number of weeks worked during the Settlement Class Period.  The Net Settlement Amount will first be divided by the total number of weeks worked, in aggregate, by the Participating Class Members to determine the monetary value of each workweek.  Each Participating Class Member's Settlement Share will then be calculated by multiplying that individual's number of weeks worked within the Settlement Class Period by the monetary value of each workweek.  Each Participating Class Member will be eligible to recover his or her Settlement Share in two checks as follows:

a.    **Class Payment:**  One check consisting of ninety five percent (95%) of their Settlement Share will automatically be sent to all Participating Class Members without the need for returning a claim form.

b.    **FLSA Claim Payment:**  A second check consisting of the remaining five percent (5%) of their Settlement Share will be sent only to those Participating Class Members who timely execute and return a FLSA Opt-In Form for purposes of releasing FLSA claims (hereafter "FLSA Opt-Ins").  Funds allocated to the FLSA Claim Payment for Participating Class Members who do not timely execute and return a FLSA Opt-In Form shall be re-allocated pro-rata, based on weeks worked within the Settlement Class Period, among the FLSA Opt-Ins and added to their FLSA Claim Payment.

2.    **Settlement Share Tax Allocation**. All Settlement Shares will be allocated for purposes of taxes and withholdings as follows: 1/3 to Settlement of wage claims, 2/3 to Settlement of claims for interest and penalties. The portion allocated to wages shall be subject to all applicable withholdings and reported on an IRS Form W-2 and the portion allocated to interest and penalties shall be reported on an IRS Form 1099 by the Settlement Administrator.

3.    **Tax Obligations.** Each Participating Class Member will be responsible for their own tax obligations. The Parties agree and understand that Defendant has not made any representations regarding the tax obligations or

consequences, if any, related to this Settlement. The Parties agree that Defendant and each Participating Class Member are solely responsible for determining the tax consequences of payments made pursuant to this Settlement and for paying taxes, if any, which are determined to be owed by each of them or on such payments (including penalties and interest related thereto) by any taxing authority, whether state, local, or federal.

4.    **No Determination of Eligibility for Employee Benefits.** Defendant will not use the Settlement payments for determination of eligibility for, or calculation of, any employee benefits (e.g., vacations, holiday pay, retirement plans, etc.) of the Participating Class Members, and Defendant will not modify the Participating Class Members' previously credited hours of service or other eligibility criteria under any employee pension benefit plan or employee welfare plan sponsored by Defendant, unless otherwise required by law.

5.    **No Reversion.** Participating Class Members are entitled to 100% of the Net Settlement Amount. Defendant maintains no reversionary right to any portion of the Net Settlement Amount.

6.    **Effect of Non-Participating Class Members.** Non-Participating Class Members will receive no Settlement Share. Their shares will be part of the Net Settlement Amount distributed to Participating Class Members.

7.    **Employer's Share of Payroll Taxes.** Defendant will be separately responsible for its share of any applicable employer payroll taxes owing on the Settlement Shares, including the standard employer FICA, FUTA, and SDI contributions, which shall not be paid from the Gross Settlement Amount.  The Settlement Administrator will give Defendant an estimate of the employer's share of payroll taxes within five (5) business days of sending out the Class Notice. Upon calculation of each Participating Class Member's Settlement Share, and at least three (3) business days after the Effective Date (if not sooner), the Settlement Administrator shall advise Defendant of the amount of the employer's share of payroll taxes. Defendant will provide that amount to the Settlement Administrator within ten (10) business days after fully funding the Gross Settlement Amount. The Settlement Administrator will be responsible for forwarding all payroll taxes and penalties to the appropriate government authorities.

D.    **Settlement Approval and Notice Procedure**. The Parties stipulate and agree to the following schedule and procedures for obtaining the Court's approval of the Settlement, including seeking conditional certification of the Class and Collective not previously certified by the Court only for purposes of Settlement, and notifying the Class and Collective of the Settlement:

1.    **Motion for Preliminary Approval of Settlement by the Court.**

SETTLEMENT AGREEMENT AND RELEASE

a.      Plaintiff will move the Court for (collectively, "Motion for Preliminary Approval"):

 (i) Conditional certification, solely for Settlement purposes, of the Class and Collective pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216. Solely for Settlement purposes, Plaintiff agrees to seek, and Defendant consents to, certification by the Court of the Class and Collective as defined in this Agreement.

 (ii) Preliminary approval of the terms of this Settlement.

 (iii) Approval of the Class Notice Packet, Settlement procedure, and appointment of the Settlement Administrator.

 (iv) Scheduling of a Final Approval Hearing on the question of whether the terms of this Settlement should be finally approved as fair, reasonable, and adequate as to Plaintiff and the Class Members.

b.      The Parties have agreed to the certification of the Class and Collective identified in this Agreement for the sole purpose of effectuating this Settlement. The conditional certification of the Class/Collective identified above shall be binding only with respect to the Settlement of the Lawsuit. In the event that this Agreement is cancelled or voided pursuant to its terms, or not approved by the Court, or should the Final Approval Order not become final, the certification of this Class/Collective shall be vacated, the Lawsuit shall proceed as though the Class/Collective had never been certified for Settlement purposes, this Agreement shall be of no force or effect and the fact that the Parties were willing to stipulate to certification of this Class/Collective as part of the Settlement will have no bearing on, and will not be admissible in connection with, the issue of whether either or any Class/Collective should be certified in a non-Settlement context in the Lawsuit or any other action, and in any of those events Defendant expressly reserves the right to oppose Class/Collective certification and/or seek decertification.

c.      In the event that the terms or conditions of this Settlement, other than the terms pertaining to the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, or Class Representative Payment, are materially modified by any Court, any party in its sole discretion to be exercised within fourteen (14) days after such a material modification may declare this Settlement null and void.  In addition, Defendant, at its sole option, may declare this Settlement null and void within five (5) business days after learning that five

percent (5%) or more of the Class Members timely and properly requested exclusion from the Settlement.  If Defendant exercise their rights under this paragraph, it shall be solely liable for the Settlement Administrator costs.

**d.**    Class Counsel will draft and submit with the Motion for Preliminary Approval and a Proposed Order Granting Preliminary Approval of Settlement and Setting Hearing for Final Approval of Settlement. Class Counsel will provide Defendant's counsel with a draft of the motion for preliminary approval at least one week prior to filing the motion.

2.    **Notice to Class Members.** If the Court enters an Order granting Preliminary Approval of the Settlement, every Class Member who can be located will be provided with notice of the Settlement as follows:

**a.**    **Class Data.** Within fourteen (14) calendar days after the Court enters Preliminary Approval of the Settlement, Defendant shall provide the Settlement Administrator with the following information for each Class Member:  (1) full name; (2) last known address; (3) Social Security Number; and (4) weeks worked during the Settlement Class Period (collectively "Class Data").

**b.**    **Dissemination of Class Notice.** Upon receipt of the Class Data, the Settlement Administrator will perform a search based on the National Change of Address Database to update and correct any known or identifiable address changes.  Within thirty (30) days after the Court enters Preliminary Approval of the Settlement, the Settlement Administrator shall mail the Class Notice Packet to all Class Members via regular First Class U.S. Mail ("Class Mailing Date").  Each Class Notice shall state the number of workweeks within the Settlement Class Period the individual Class Member is credited with working, and an estimate of that individual's estimated Settlement Share.

**c.**    **Undeliverable Notices.** Any Class Notice Packet returned to the Settlement Administrator as undeliverable on or before the deadline for submitting an Exclusion Form and/or FLSA Opt-In Form, shall be re-mailed to the forwarding address, if any, affixed thereto.  If no forwarding address is affixed, the Settlement Administrator shall promptly attempt to determine a correct address by use of skip tracing or any other equivalently effective search method, and shall then perform a re-mailing, if another mailing address is identified by the Settlement Administrator from the search.  Class Members who are sent a re-mailed Class Notice Packet shall have an additional fifteen (15) days to respond.

d.       **Elections Not to Participate in Settlement.** Class Members who wish to exclude themselves from the Settlement must complete, sign, and return to the Settlement Administrator the Exclusion Form postmarked no later than sixty (60) calendar days from the Class Mailing Date.  The Class Notice shall advise that, to be considered valid, an Exclusion Form must: (1) include the individual's full name and address; (2) include the last four digits of the individual's Social Security Number; and (3) be postmarked to the Settlement Administrator no later than sixty (60) days from the Class Mailing Date. An individual who timely returns a valid Exclusion Form will be deemed to have opted-out and will not participate in or be bound by the Settlement.  Persons who submit a valid and timely Exclusion Form shall not be permitted to object to the Settlement and will not receive any Settlement Share.

e.       **FLSA Opt-Ins.**  Class Members who wish to opt-in to the Released FLSA Claims and receive a FLSA Claim Payment must execute and return to the Settlement Administrator the FLSA Opt-In Form postmarked within sixty (60) calendar days of the Class Mailing Date.  The postmark date shall be deemed the exclusive means for determining if the FLSA Opt-In is timely.  If a Class Member timely returns both an Exclusion Form and a FLSA Opt-In Form, the Class Member shall be excluded from the Settlement and shall not be eligible for a FLSA Claim Payment unless the Class Member sends the Settlement Administrator a signed written retraction of the Exclusion Form, postmarked no later than seventy (70) calendar days of the Class Mailing Date.

f.       **Objections.** To object to the Settlement, a Class Member must send a written objection to the Court, either by mailing it to the Class Action Clerk for the San Jose division of the United States District Court for the Northern District of California or by filing it in person at any location of the United States District Court for the Northern District of California and be filed or postmarked within sixty (60) days of the Class Mailing Date.  The Class Notice shall advise that an objection should: (1) be in writing; (2) include the objector's full name and address; (3) include the last four digits of the objector's Social Security Number; (4) state the basis for the objection and include any supporting documents; (5) state the case name and case number for this Lawsuit which shall be set forth in the Class Notice; and (6) be filed or postmarked within sixty (60) days of the Class Mailing Date.

g.       **Class Member Disputes**. If a Class Member disagrees with the number of workweeks used to calculate his or her estimated Settlement Share, the Class Member must complete and mail a notice of dispute to the Settlement Administrator, together with any

supporting written documentation, postmarked within sixty (60) days of the Class Mailing Date. The Settlement Administrator shall immediately notify Class Counsel and Defense Counsel of any such disputes by sharing with both Class Counsel and Defense Counsel the notice of dispute and any documentation submitted by a Class Member in support of his or her dispute. For all timely disputes, the Settlement Administrator will consult with the Parties to determine whether an adjustment is warranted.  The Settlement Administrator shall then determine the correct workweek data for the individual at issue, and the Settlement Administrator's determination shall be binding upon the Class Member unless the Court holds otherwise. The Settlement Administrator shall make all such determinations no later than fourteen (14) days after the dispute is received from the Class Member.

    **h.**    **Declaration of Due Diligence**. At least sixteen (16) Court days before the Final Approval Hearing, the Settlement Administrator shall prepare a declaration of due diligence and proof of mailing with regard to the mailing of the Class Notice Packet, and any attempts by the Settlement Administrator to locate the members of the Class ("Due Diligence Declaration"), to Class Counsel and Defense Counsel for presentation to the Court. Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

    3.    **Motion for Final Approval of the Settlement.**  Prior to the final fairness hearing, and consistent with any deadlines imposed by the Court, Class Counsel shall file a motion for final approval of the Settlement and request entry of the Final Approval Order.  Class Counsel will provide a draft of the motion for final approval to Defendant's counsel at least one week prior to filing the motion.

E.    **Disbursement of the Gross Settlement Fund.** Within fourteen (14) business days of Defendant fully funding the Gross Settlement Amount, the Settlement Administrator shall distribute all payments owing under the Settlement, including the Class Counsel Fees Payment approved by the Court, the Class Counsel Litigation Expenses Payment approved by the Court, the Class Representative Payment approved by the Court, the Settlement Administrator fees and costs approved by the Court, the portion of the PAGA Payment payable to the LWDA, and the Settlement Share to each Participating Class Member.

    1.    **Uncashed Settlement Share Checks.** All checks issued to Participating Class Members will remain valid for one hundred eighty (180) days from the date of issuance.  The Settlement Administrator shall deposit the amount of any uncashed checks with the Court's Unclaimed Funds Registry in the Participating Class Member's Name.

F.    **Release of Claims.**

1.    **Plaintiff.**  Plaintiff, on behalf of herself and her respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors in interest and assigns ("Plaintiff's Releasing Parties"), hereby fully and finally releases Released Parties from any and all claims and obligations against Released Parties, including without limitation any arising in any way from Plaintiff's employment with Defendant or the cessation thereof, whether such claims are known or unknown, suspected or unsuspected, arising on or before the date on which Plaintiff signs this Agreement (unless a release of claims is excluded by law). Plaintiff further expressly waives any rights against Defendant and the Released Parties conferred upon her by California Civil Code Section 1542, and expressly consents that this Agreement shall be given full force and effect according to all of its terms, including those terms relating to unknown and unsuspected claims, if any. Section 1542 provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiff further agrees that:

a.    She shall not make any assignment of any claim released herein, and represents that no such assignment has been made;

b.    She alone is responsible for the tax consequences, including any penalties or interest, relating to her receipt of the Class Representative Payment; and

c.    In the event that the Court denies, modifies, or reduces any request for a Class Representative Payment, she may not seek to modify, revoke, cancel, terminate, or void this Agreement.

2.    **Participating Class Members.**

a.    **Released Non-FLSA Claims.**  Each Participating Class Member, regardless of whether he or she returns a FLSA Opt-In Form, shall, upon the Effective Date, be deemed to have released on behalf of himself or herself, and his or her respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors in interest and assigns, the Defendant and

the other Released Parties from any and all Released Non-FLSA Claims that accrued during the Settlement Class Period. The Released Non-FLSA Claims are not contingent on a Participating Class Member cashing his or her Class Payment.

**b.**  **Released FLSA Claims.** Each Participating Class Member who timely returns a valid FLSA Opt-In Form shall, upon the Effective Date, be deemed to have also released on behalf of himself or herself, and his or her respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors in interest and assigns, the Defendant and the other Released Parties from any and all Released FLSA Claims that accrued during the Settlement Class Period. The Released FLSA Claims are not contingent on a Participating Class Member cashing his or her FLSA Claim Payment.

G.  **Miscellaneous Terms.**

1.  **No Admission of Liability.** Defendant denies each and all of the claims alleged by Plaintiff and Class Members in the Lawsuit. In addition, Defendant contends that they have complied with their obligations under California law. Neither this Settlement, nor any document referred to or contemplated therein, nor any action taken to carry out this Settlement, is, may be construed as, or may be used as an admission, concession, or indication by or against Defendant of any fault, wrongdoing or liability whatsoever. This Settlement and the fact that Plaintiff and Defendant were willing to settle the Lawsuit will have no bearing on, and will not be admissible in connection with, any litigation (other than solely in connection with the Settlement).

2.  **Integrated Agreement.** After this Agreement is signed and delivered by all Parties and their counsel, this Agreement will constitute the entire agreement between the Parties relating to the Settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, covenants, and inducements expressly stated in this Agreement. All prior or contemporaneous agreements, understandings, and statements, whether oral or written, whether express or implied, and whether by a Party or a Party's counsel, are merged herein.

3.  **Attorney Authorization.** Class Counsel and Defense Counsel warrant and represent that they are authorized by Plaintiff and Defendant, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate and use their best efforts to affect the implementation of the Settlement.

4.      **Modification of Agreement.** This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their successors-in-interest.

5.      **Agreement Binding on Successors.** This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

6.      **Cooperation in Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

7.      **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

8.      **Notice.** All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

To Plaintiff and the Class:

Matthew B. Hayes
HAYES PAWLENKO LLP
1414 Fair Oaks Avenue, Unit 2B
South Pasadena, CA 91030
Telephone: (626) 808-4357
Facsimile: (626) 921-4932
Email: mhayes@helpcounsel.com

To Defendant:

Charles L. Post, Esq.
Ryan E. Abernethy, Esq.
Weintraub Tobin Chediak Coleman Grodin
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, CA 95814
Telephone: (916) 558-6000
Facsimile: (916) 446-1611
Email: rabernethy@weintraub.com

**IN WITNESS WHEREOF**, the undersigned Parties and their duly authorized representatives accept and agree to the terms of this Agreement and hereby execute it voluntarily and with a full understanding of its consequences.

_sharae massey (Mar 28, 2022 18:19 EDT)_

Sharae Massey
Plaintiff

03/28/2022

Date

_Nancy Frost_

Nancy Frost
President of Defendant Star Nursing, Inc.

03/31/2022

Date

**APPROVED AS TO CONTENT AND FORM:**

**HAYES PAWLENKO LLP**
Matthew B. Hayes

By: Matthew B. Hayes
Counsel for Plaintiff

3/28/22

Date

**Weintraub tobin** chediak coleman grodin
Ryan E. Abernethy

By: Ryan E. Abernethy
Counsel for Defendant Star Nursing, Inc.

**4/1/2022**

Date

**EXHIBIT A**

Alameda - Fairmont

Alameda - Highland

Alameda - John George

Alameda - San Leandro

Alameda - UCSF

Alameda Health System

Alameda-Alameda

AMN

AMN Healthcare Services Inc

Arrowhead Regional MC

Asbury Park Nursing and Rehab

Avalon Health Care Management Inc.

Avalon-HyLond Merced

Avalon-HyLond Modesto

Avalon-San Andreas

Avalon-Sonora

Avondale Villa Post Acute

Bancroft Convalescent Hospital

Canyon Springs Post Acute

Carleton Senior Living

Carlton Senior Living

Casa Coloma Healthcare Center

SETTLEMENT AGREEMENT AND RELEASE

Cottonwood Post-Acute Rehab

Country Villa Wilshire

Crescent City Skilled Nursing

Cross Country Healthcare, Inc.

CrossCountry

Crystal Ridge Care Center

Cupertino Health and Wellness

Cypress Healthcare Group, LLC

Double Tree Post Acute

Empress

Ensign Group, Inc

Eskaton Properties, Inc

ESKATON-Fair Oaks

ESKATON-Greenhaven

ESKATON-Manzanita

ESKATON-Village

Eureka Rehab and Wellness

Eva Care Group

Fortuna Rehab & Wellness

Franciscan Convalescent Hospital

Garden City Healthcare Center

Golden Hill Post Acute

Granada Rehab and Wellness

Hayward Springs

Kit Carson

SETTLEMENT AGREEMENT AND RELEASE

Lafayette

Lincoln Meadows Care Center

Links Healthcare Group, LLC

Marin County

Marin County, CA

Marysville Post Acute

Medefis

Mederis, Inc

Montclair

Napa Valley Care Center

Oceans Behavioral

Oceans Healthcare, Inc

Plum Healthcare Group

Quality Healthcare, Inc

Redwood Cove Healthcare Center

Redwood Springs Healthcare Center

River Bend Nursing Center

River Valley Care Center

RiverPointe Post Acute

Rockport Healthcare Services

Rocky Point Care Center

Sacramento Post Acute

San Bernardino County, CA

Santa Rosa Post Acute

Seaview Rehab and Wellness

{3390680.DOCX:}                    19

Sequoia Transitional Care

Sherwood Oaks Healthcare Center

South Bay Post Acute

Stanford Healthcare

The Covington

The Orchards Post Acute

The Redwoods Post Acute

Valley Care

Vasona Creek Healthcare Center

Victoria Post Acute

Vineyard Post Acute

Westview Healthcare Center

Westwood Post Acute

White Blossom Care Center

Windsor Concord

Windsor Country Drive

Windsor El Camino

Windsor Elk Grove

Windsor Gardens

Windsor Golden Hill

Windsor Hampton

Windsor Hayward

Windsor Healthcare Management, Inc

Windsor Modesto

Windsor Monterey

SETTLEMENT AGREEMENT AND RELEASE

Windsor Palm Valley

Windsor Petaluma

Windsor Redding

Windsor Sacramento

Windsor Skyline

Windsor -The Ridge

Wolf Creek Care Center

Woodside Healthcare Center

Yuba City Post Acute

SETTLEMENT AGREEMENT AND RELEASE